**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 13-2003**

GEORGIA-PACIFIC CONSUMER PRODUCTS LP,

                Plaintiff - Appellee,

    and

GEORGIA-PACIFIC CORPORATION,

                Plaintiff,

    v.

VON DREHLE CORPORATION, a North Carolina corporation,

                Defendant - Appellant,

    and

CAROLINA JANITORIAL & MAINTENANCE SUPPLY, a North Carolina corporation,

                Defendant,

MYERS SUPPLY, INCORPORATED,

                Intervenor/Defendant.

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (5:05-cv-00478-BO)

Argued: December 11, 2014         Decided: March 30, 2015

Amended: April 15, 2015

Before NIEMEYER, SHEDD, and KEENAN, Circuit Judges.

---

Vacated, reversed in part, and remanded in part, with instructions, by published opinion. Judge Niemeyer wrote the opinion, in which Judge Shedd concurred as to Parts I, III, IV, and V and Judge Keenan concurred in full. Judge Shedd wrote a separate opinion, concurring in part and dissenting in part.

---

**ARGUED:** Carter Glasgow Phillips, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. Miguel A. Estrada, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C., for Appellee. **ON BRIEF:** Michael P. Thomas, PATRICK HARPER & DIXON, LLP, Hickory, North Carolina; Richard Klingler, Jacqueline G. Cooper, Nicolas W. Thompson, John Paul Schnapper-Casteras, SIDLEY AUSTIN LLP, Washington, D.C., for Appellant. Stephen P. Demm, John Gary Maynard, III, HUNTON & WILLIAMS LLP, Richmond, Virginia; Jonathan C. Bond, GIBSON, DUNN & CRUTCHER LLP, Washington, D.C.; W. Kyle Carpenter, WOOLF, MCCLANE, BRIGHT, ALLEN & CARPENTER, PLLC, Knoxville, Tennessee, for Appellee.

---

NIEMEYER, Circuit Judge:

This trademark infringement case presents several issues regarding the appropriate relief that may be granted under the Lanham Act, 15 U.S.C. §§ 1051-1141n, specifically § 1116 (authorizing injunctive relief) and § 1117 (authorizing monetary relief).

Georgia-Pacific Consumer Products LP owns the trademark "enMotion," which it uses to brand a paper-towel dispenser that dispenses paper towels when a motion sensor is triggered by the user. Georgia-Pacific designed its enMotion dispenser to dispense only ten-inch paper towels that it manufactured.

von Drehle Corporation, a North Carolina corporation that competes with Georgia-Pacific in the sale of paper towels, designed a less expensive paper towel -- the "810-B" paper towel -- that it sold specifically for use in Georgia-Pacific's enMotion towel dispensers.

In response to von Drehle's practice of selling its 810-B paper towels for "stuffing" into enMotion towel dispensers, Georgia-Pacific commenced three separate actions against von Drehle or its distributors. Each action alleged that the "stuffing" practice constituted contributory trademark infringement of Georgia-Pacific's enMotion mark, in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a). Specifically, in this action, Georgia-Pacific claimed that von Drehle "knowingly and

3

intentionally" manufactured the 810-B paper towel "specifically and solely for use" in Georgia-Pacific's enMotion towel dispensers and that the practice of stuffing enMotion dispensers with the 810-B paper towel was "likely to cause confusion and . . . deceive End-User Customers." In January 2012, a jury agreed that von Drehle's conduct constituted contributory trademark infringement and, as requested at closing argument, awarded Georgia-Pacific $791,431, which represented all of the profits that von Drehle earned from the sale of its 810-B paper towels from 2005 to the date of trial. After the jury returned its verdict, the district court entered a permanent, nationwide injunction prohibiting von Drehle from directly or indirectly infringing Georgia-Pacific's trademark rights. In addition, because the court found that von Drehle's infringement was "willful and intentional," it (1) trebled the jury's award from $791,431 to $2,374,293; (2) awarded Georgia-Pacific attorneys fees in the amount of $2,225,782; and (3) awarded it prejudgment interest in the amount of $204,450. Finally, the court awarded Georgia-Pacific $82,758 in court costs.

In a parallel action that Georgia-Pacific commenced in the Western District of Arkansas against one of von Drehle's distributors, the district court had, by the time of the trial in this action, already ruled against Georgia-Pacific, concluding that the practice of stuffing von Drehle's 810-B

4

paper towel into Georgia-Pacific's enMotion dispensers "did not create a likelihood of confusion," Georgia-Pacific Consumer Prod. LP v. Myers Supply, Inc., No. 6:08-cv-6086, 2009 WL 2192721, at *8 (W.D. Ark. July 23, 2009), and the Eighth Circuit affirmed, 621 F.3d 771, 777 (8th Cir. 2010) (holding that the district court did not "clearly err in finding that the trademark on a dispenser does not indicate the source of the paper towels inside, and concluding that there was no likelihood of confusion, and thus no trademark infringement").

In the second parallel action, which Georgia-Pacific commenced against one of von Drehle's distributors in the Northern District of Ohio, the district court had, by the time of the trial in this action, also ruled against Georgia-Pacific. The court held that the Arkansas judgment precluded Georgia-Pacific from relitigating its trademark infringement claim, see Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 821 F. Supp. 2d 948 (N.D. Ohio 2011), and the Sixth Circuit affirmed, 701 F.3d 1093, 1103 (6th Cir. 2012).

On appeal from the remedies award in this case, von Drehle challenges the geographical scope of the district court's injunction, arguing that the Eighth and Sixth Circuits' rulings against Georgia-Pacific render the injunction entered by the district court unduly broad. It also challenges the monetary awards, contending that the district court applied the wrong

5

legal standards for trebling the jury award and for awarding attorneys fees and prejudgment interest.

Because we agree with von Drehle, we reverse the district court's judgment in part and vacate and remand in part, with instructions. As to the injunction, we instruct the district court to narrow it to cover only the geographical area of the Fourth Circuit. As to the monetary awards, (1) we reverse the treble damages award and instruct the district court to reinstate the jury's award of $791,431; (2) we vacate the award of attorneys fees and remand for application of the appropriate standard; and (3) we reverse the award of prejudgment interest.

I

In 2005, after learning of von Drehle's practice of "stuffing" or "causing to be stuffed" Georgia-Pacific enMotion towel dispensers with von Drehle 810-B paper towels, Georgia-Pacific sent von Drehle a letter "[d]emand[ing] . . . that von Drehle immediately cease and desist marketing, selling and distributing the 810 towel." von Drehle rejected Georgia-Pacific's demand, stating that it considered its conduct to be legitimate competition that did not infringe Georgia-Pacific's enMotion trademark.

Georgia-Pacific thereafter commenced this action, alleging that von Drehle's stuffing practices constituted contributory

6

trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a). It alleged that von Drehle "knowingly and intentionally manufactured -- or directed the manufacture -- and sold -- or directed the sale of -- finished paper towel rolls designed specifically and solely for use in enMotion dispensers," and that this practice was "likely to cause confusion and . . . to deceive End-User Customers . . . ." Georgia-Pacific sought injunctive relief, an accounting of von Drehle's profits, and damages.

The district court granted von Drehle's motion for summary judgment, concluding that Georgia-Pacific had "failed to show that von Drehle's sale of its 810-B paper towel roll to distributors for use in enMotion dispensers caused consumer confusion." Georgia-Pacific Consumer, Prods. LP v. von Drehle Corp., 645 F. Supp. 2d 532, 536 (E.D.N.C. 2009). The court considered the end-users in this context to be "those business owners who purchase[d] paper towel rolls from distributors for the enMotion dispensers installed in their premises," a class of consumers who "kn[e]w exactly from which company they [were] purchasing the paper towel rolls." Id. at 537. By order dated August 10, 2010, we reversed and remanded, holding that the district court "erred in limiting its likelihood of confusion inquiry to distributors who purchased 810-B Toweling and their respective end-user customers," such as hotels. Georgia-Pacific

Consumer Prods., LP v. von Drehle Corp., 618 F.3d 441, 453 (4th Cir. 2010). We pointed out that "Fourth Circuit case law makes room for the factfinder to consider confusion among the non-purchasing public in the likelihood-of-confusion inquiry." Id.

On remand, von Drehle filed a motion seeking judgment as a matter of law, arguing that the decision of the Western District of Arkansas, which rejected Georgia-Pacific's infringement claims, should preclude Georgia-Pacific from advancing those same claims in this case. The district court, however, denied von Drehle's motion and set the matter for trial, explaining that von Drehle had inordinately delayed raising its preclusion argument.

At the three-day trial, Georgia-Pacific presented its case to the jury for contributory trademark infringement and requested injunctive relief and disgorgement of von Drehle's profits. At closing argument to the jury, counsel for Georgia-Pacific stated:

> So what we want is for [von Drehle] to quit doing it, and we want damages. The damages we want and I think from the Judge's instructions you will find if we prevail we are entitled to this -- [is] for them to give up the profits that they made selling knock-off paper to put into our trademarked dispenser. And the only number in the record on that is in Plaintiff's Exhibit 266 [summarizing von Drehle's annual gross profits from the sale of 810-B paper towels from 2004 through 2011]. They made a profit of $794,000 from the time that they put it on the market in 2004 through 2011. And that's what we're asking you for, the profits, give us the profits that you made trading

8

> on our name and our trademark. So I submit to you when you get back there and you go through all these packages, get to the verdict form, the first question is, have we proven trademark infringement? Yes. The second question is, what are the damages? $794,000.

(Emphasis added). Just as Georgia-Pacific's counsel requested, the jury returned a verdict answering "yes" to the question whether von Drehle infringed Georgia-Pacific's trademark and awarding Georgia-Pacific: "$791,431 when the cease [and desist] letter came out Jan 05." Because Exhibit 266, to which counsel referred at closing argument, included profit for 2004 in the amount of $2,569, which was earned before the cease and desist letter was sent, the jury apparently subtracted that sum from the $794,000 amount requested to arrive at its award of $791,431. The jury thus awarded Georgia-Pacific 100% of the profits that it requested for the period beginning with its cease-and-desist letter in January 2005 and ending in December 2011.

Following trial, von Drehle renewed its motion for judgment as a matter of law based on claim and issue preclusion, and the district court granted it, vacating the jury verdict and entering judgment for von Drehle. Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 856 F. Supp. 2d 750, 757 (E.D.N.C. 2012). The court explained:

> The question submitted to the jury in this case was whether "plaintiff established by a preponderance of the evidence that the defendant infringed on

9

> plaintiff's valid trademark." The jury responded to this question in the affirmative. However, because another court had previously decided this same question in the negative, this Court now holds that Defendant should be permitted to raise the affirmative defense of claim and issue preclusion and that judgment as a matter of law is appropriate.

Id. at 753 (citation omitted). On appeal, we again reversed, concluding that "von Drehle [had] waived its preclusion defenses" and that "the district court abused its discretion by allowing von Drehle to assert its preclusion defenses 16 months after the substantive basis for those defenses was known to von Drehle." Georgia-Pacific Consumer Prods., LP v. von Drehle Corp., 710 F.3d 527, 536 (4th Cir.), cert. denied, 134 S. Ct. 393 (2013). We remanded the case with instructions to reinstate the jury verdict and to consider the other relief that Georgia-Pacific had requested. Id.

On remand, the district court granted Georgia-Pacific the injunctive relief it requested and, finding von Drehle's infringement to have been willful and intentional, trebled the jury verdict, awarded attorneys fees, and awarded prejudgment interest. Including court costs, the total monetary award amounted to $4,887,283.51.

From the judgment entered on July 28, 2013, von Drehle filed this appeal, challenging the geographical scope of the injunction and each monetary award except court costs.

10

As part of the post-verdict relief granted, the district court entered a permanent, nationwide injunction prohibiting von Drehle "from interfering directly or indirectly with [Georgia-Pacific's] trademark rights," which, the court stated, included "the right of [Georgia-Pacific] to enforce the use of only their paper towel products in their enMotion dispensers." Georgia-Pacific Consumer Prods. LP v. von Drehle Corp, No. 5:05-cv-478-BO, 2013 WL 3923984, at *2 (E.D.N.C. July 29, 2013). von Drehle contends that the district court should not have issued a nationwide injunction that "conflict[s] with the decisions of other circuits" and that "undermine[s] the prerogatives of courts of appeals that have yet to address the relevant legal issues." As noted, both the Eighth and the Sixth Circuits have concluded that Georgia-Pacific may not enforce its enMotion mark to prohibit the practice of stuffing von Drehle's 810-B paper towels into enMotion towel dispensers. See Myers Supply, 621 F.3d at 777; Four-U-Packaging, 701 F.3d at 1103.

We review the scope of a permanent injunction for abuse of discretion. See Tuttle v. Arlington Cnty. Sch. Bd., 195 F.3d 698, 703 (4th Cir. 1999).

Neither party contends that a district court, as a general matter, lacks authority to issue a nationwide injunction prohibiting trademark infringement. See 15 U.S.C. § 1116(a);

11

see also Va. Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379, 393 (4th Cir. 2001) ("Nationwide injunctions are appropriate if necessary to afford relief to the prevailing party"), abrogation on other grounds recognized in Real Truth About Abortion, Inc. v. FEC, 681 F.3d 544, 550 n.2 (4th Cir. 2012); Richmond Tenants Org., Inc. v. Kemp, 956 F.2d 1300, 1302, 1309 (4th Cir. 1992) (holding that a nationwide injunction was "appropriately tailored to prevent irreparable injury" where the various plaintiffs resided in different parts of the country); see also United States v. AMC Entm't, Inc., 549 F.3d 760, 770 (9th Cir. 2008) ("[T]he court has the power to enforce the terms of the injunction outside the territorial jurisdiction of the court, including issuing a nationwide injunction"). Nonetheless, equity requires that injunctions be carefully tailored, especially where, as here, questions of inter-circuit comity are involved. See Va. Soc'y, 263 F.3d at 393-94; AMC Entm't, 549 F.3d at 773 ("Principles of comity require that, once a sister circuit has spoken to an issue, that pronouncement is the law of that geographical area"); id. at 770 ("Courts ordinarily should not award injunctive relief that would cause substantial interference with another court's sovereignty").

Within the 11 States comprising the Eighth and Sixth Circuits, courts of appeals have held that Georgia-Pacific may not enforce its enMotion mark to prohibit the stuffing of von

12

Drehle 810-B paper towels into enMotion towel dispensers. For us to now countenance an injunction that would give Georgia-Pacific the right to enforce its mark in those States would amount to a direct and unseemly affront to those courts. And such an affront would only be exacerbated in light of our earlier ruling, where we refused to recognize their decisions due to von Drehle's tardiness. In addition, upholding the nationwide injunction would, as a practical matter, create a direct and perhaps irreconcilable conflict as to Georgia-Pacific's trademark rights in the Eighth and Sixth Circuits, leaving litigants and others in those States confused. As a matter of comity, therefore, we conclude that the district court abused its discretion in extending the injunction to those jurisdictions, and accordingly we will not authorize its enforcement within the Eighth and Sixth Circuits.

The question remains whether we should nonetheless authorize the injunction to operate within those circuits that have not yet had occasion to consider these issues. Courts in circuits other than the Eighth and Sixth now face a significant split of authority regarding the enforceability of Georgia-Pacific's enMotion trademark in the context of von Drehle's stuffing practices. Were Georgia-Pacific to commence identical litigation against von Drehle or one of its distributors in the First Circuit, for example, that court would be faced with the

question of whether to follow the Fourth Circuit on the one hand or the Eighth and Sixth Circuits on the other. Because the forum court should be free to resolve this question, comity also requires that we not allow the injunction to extend to the remaining circuits. Cf. Va. Soc'y, 263 F.3d at 393-94 (refusing to issue an injunction that would have "encroache[d] on the ability of other circuits to consider" an important legal question and "impos[ed] our view of the law on all the other circuits").

Georgia-Pacific challenges this conclusion on two grounds. First, it contends that von Drehle waived any challenge to the scope of the injunction because it failed to present the argument to the district court. The record, however, belies this contention. In response to Georgia-Pacific's motion for a permanent injunction, von Drehle argued to the district court that the judgment against it "has created a significant split with the Sixth and Eighth Circuits" and that the district court "cannot and should not enter any injunction which impacts . . . the Sixth and Eighth Circuit decisions." In addition, at the hearing before the district court on the motion, von Drehle pointed out that "the Eighth Circuit and the Sixth Circuit have found [that] this conduct is not infringement" and accordingly maintained that, "to the extent [the court] is going to grant an injunction, . . . the injunction needs to take . . . into

14

account [those] rulings."   Finally, it is clear that the district court was fully aware of von Drehle's argument, as indicated by its remark to Georgia-Pacific's attorney during the same hearing that "this injunction can't go into Ohio and Tennessee where you've lost.   It can only hold water where you've won."

Second, Georgia-Pacific argues that "there is no basis for von Drehle's claim that the injunction . . . interferes with the Myers or Four-U rulings" because "[n]either decision determined the rights of von Drehle, which was not a party to either case." But such an argument takes a far too technical view of this case, especially when considering the inter-circuit comity issues involved.   Even though there was not a precise identity of parties, the fact remains that Georgia-Pacific has been given the right to enforce its trademark against von Drehle's stuffing practices in the Fourth Circuit and has been denied that right in the Eighth and Sixth Circuits.

Accordingly, for the sake of comity, we require, under the unique circumstances of this case, that the injunction be limited geographically to the States in this circuit.   We therefore vacate the injunction granted by the district court and remand with instructions to modify it in accordance with this opinion.

15

In response to Georgia-Pacific's request for treble damages, the district court observed that an award of treble damages "is appropriate when there has been a finding of willful or intentional infringement." Georgia-Pacific, 2013 WL 3923984, at *2 (citing Larsen v. Terk Techs. Corp., 151 F.3d 140, 150 (4th Cir. 1998)). After noting that von Drehle's president had testified that von Drehle's 810-B towels were specifically designed to fit the Georgia-Pacific enMotion dispensers and that he knew that they would be stuffed into enMotion dispensers, the court concluded that von Drehle's infringement was "willful and intentional." Relying on Larsen, it accordingly trebled the jury's award of $791,431 to $2,374,293.

von Drehle contends that the district court erred in applying the "willful and intentional" standard from Larsen because Larsen applied to a recovery under § 1117(b), which requires a court to treble damages for a knowing and intentional use of a counterfeit mark. This case, however, involves a recovery of profits under § 1117(a), and therefore, von Drehle argues, the court is authorized to adjust the jury's award only if it deems the recovery to be "inadequate or excessive," and then only to compensate the plaintiff, not to punish the defendant.

Georgia-Pacific argues that although Larsen interprets § 1117(b), it is hardly irrelevant in this case because the "counterfeiting claims addressed by [§ 1117(b)] provide a close parallel to the claims at issue here." And it contends that "whatever the basis of the plaintiff's proven injury -- profits, damages, or both -- the statute expressly permits the court to award a greater sum."

We agree with von Drehle that, by relying on Larsen and awarding treble damages for willful and intentional infringement, the district court erroneously conflated § 1117(a) and § 1117(b).

Monetary relief for trademark infringement is provided for in 15 U.S.C. § 1117, and each type of monetary award is categorized with particularity and separately addressed. Section 1117(a), which applies generally to trademark infringement cases (and which the parties agree applies in this case), authorizes a plaintiff to recover (1) the defendant's profits based simply on proof of the defendant's sales; (2) the plaintiff's damages; (3) court costs; and (4) in exceptional cases, attorneys fees. The section also sets forth the criteria and standards for awarding each type of recovery. As to a recovery based on the defendant's profits, § 1117(a) provides:

> In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If

17

the court shall find that the amount of the recovery based on profits is either inadequate or excessive[,] the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty.

And as to a recovery based on the plaintiff's damages, which the statute distinguishes from an award based on the defendant's profits, § 1117(a) provides:

In assessing damages the court may enter judgment, according to the circumstances of the case, for any sum above the amount found as actual damages, not exceeding three times such amount. . . . Such sum . . . shall constitute compensation and not a penalty.

Section 1117(b), on the other hand, mandates the award of treble profits or treble damages for a defendant's "use of [a] counterfeit mark" if the infringement consists of (1) "intentionally using a mark or designation, knowing such mark or designation is a counterfeit mark," or (2) "providing goods or services [using such mark], with the intent that the recipient of the goods or services would put the goods or services to use in committing the violation." 15 U.S.C. § 1117(b) (emphasis added). This section also authorizes a court to award prejudgment interest for such a violation. Thus, § 1117(b), by providing for heightened monetary awards, reflects the fact that use of a counterfeit mark is "the most blatant and egregious form of 'passing off.'" J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:10 (4th ed. 2012).

18

Section 1117 provides vastly different legal standards, based on the egregiousness of the offense, for determining when a district court can modify an award -- distinguishing an award for knowingly and intentionally using a counterfeit mark from an award for using a noncounterfeit mark. The district court therefore erred in relying on Larsen, a case involving a counterfeit mark, to award treble damages here.

Nor can Georgia-Pacific seek to justify the award of treble damages under the plain language of § 1117(a). Under that section, when a plaintiff seeks recovery based on a defendant's profits, the court may adjust the jury's verdict up or down, but only if it finds the amount of recovery to be either "inadequate or excessive," and then only insofar as the adjustment is determined to be just and compensatory, not punitive. Accord Thompson v. Haynes, 305 F.3d 1369, 1380 (Fed. Cir. 2002) ("By the terms of the statute, 'damages' are to be treated separately from 'profits.' As for damages, the court may award up to three times actual damages, depending on the circumstances of the case. As for profits, however, the court is not authorized to award up to three times the amount proved. For profits, the court is constrained to award the amount proved, subject only to an adjustment, up or down, where the recovery would be otherwise unjust"); Badger Meter, Inc. v. Grinnell Corp., 13 F.3d 1145, 1157 (7th Cir. 1994) ("[S]ection 1117(a) provides two methods

19

which the district court can utilize separately or in combination to approximate a fair recovery for the plaintiff. The first discretionary method is to award up to three times the damages plaintiff can actually prove. . . . The second discretionary method allows the court to award the plaintiff 'such sum as the court shall find to be just, according to the circumstances of the case,' and is premised on the finding that 'recovery based on [defendant's] profits is either inadequate or excessive'" (alteration in original) (quoting 15 U.S.C. § 1117(a))).

In this case, Georgia-Pacific requested a recovery consisting only of von Drehle's profits, and the jury granted that request. As counsel for Georgia-Pacific told the jury, "[t]he damages we want . . . is for them to give up the profits that they made selling knock off paper to put into our trademarked dispenser. . . . [T]hat's what we're asking you for, the profits, give us the profits that you made trading on our name and our trademarks." Indeed, it is uncontroverted that Georgia-Pacific's only claim for monetary relief in this case was based on von Drehle's profits. And, as noted, when a recovery is based on the defendant's profits, § 1117(a) gives the district court the limited discretion to increase the award only when and to the extent it deems the award to be inadequate to compensate the plaintiff for the defendant's profits. Here,

20

there would be no basis for the district court to conclude that the jury's award was inadequate to compensate Georgia-Pacific because the jury gave Georgia-Pacific virtually all that it sought. Moreover, Georgia-Pacific has never argued that the jury's award of profits was inadequate. Since enhancement of a profits recovery is the only avenue through which Georgia-Pacific could have obtained additional monetary relief under § 1117(a), the district court erred in awarding treble damages, which are punitive and are not authorized by § 1117(a) for a recovery based on profits.

Georgia-Pacific argues that von Drehle has waived any argument that treble damages were illegally awarded, contending that von Drehle did not present the issue to the district court. Again, the record belies this contention. In response to Georgia-Pacific's request for treble damages, von Drehle pointed out to the district court that enhanced damages were not appropriate because "[t]his case was submitted to the jury on Georgia-Pacific's request for an award of von Drehle's profits" and Georgia-Pacific had presented no evidence that "the verdict amount [was] insufficient to compensate [it]," and it referred the court directly to § 1117(a). While von Drehle may not have presented this argument in as detailed a fashion as it has to us on appeal, it nonetheless preserved its point for appeal.

21

Accordingly, we reverse the district court's order awarding treble damages and direct the court to enter judgment in the amount awarded by the jury, $791,431, which constitutes von Drehle's profits from the sale of its 810-B paper towels from January 7, 2005, through the end of 2011.

IV

The district court also awarded Georgia-Pacific attorneys fees of $2,225,782.35, finding that von Drehle's "willful and intentional" infringement rendered this case "exceptional," as that term is used in 15 U.S.C. § 1117(a). Georgia-Pacific, 2013 WL 3923984, at *2. Section 1117(a) provides, "The court in exceptional cases may award reasonable attorney fees to the prevailing party." (Emphasis added). The court based its willful-and-intentional finding on the fact that von Drehle specifically designed its 810-B paper towels for use in Georgia-Pacific's enMotion dispenser and knew that they would be stuffed in those dispensers.

von Drehle contends that this case is not "exceptional," as that term is used in § 1117(a), and that the district court erroneously relied on its purposeful conduct in distributing towels for use in Georgia-Pacific's enMotion machines, conflating willful and intentional conduct with willful and

22

intentional infringement.  We agree, especially since von Drehle reasonably believed that its conduct was lawful.

We have defined the "exceptional" case for purposes of § 1117(a) "as one in which 'the defendant's conduct was malicious, fraudulent, willful or deliberate in nature.'" Retail Servs., Inc. v. Freebies Publ'g, 364 F.3d 535, 550 (4th Cir. 2004) (quoting PETA v. Doughney, 263 F.3d 359, 370 (4th Cir. 2001)).  But, in this context, the word "willful" does not mean that the defendant's actions were merely volitional, but rather that the defendant acted with the intent to infringe the plaintiff's protected mark.  See, e.g., In re Outsidewall Tire Litig., 748 F. Supp. 2d 557, 562 (E.D. Va. 2010) ("'[W]illfulness' means more than simply that the act of infringement was done voluntarily and intentionally and not because of accident or other innocent reason" (internal quotation marks and citation omitted)); Vanwyk Textile Sys., B.V. v. Zimmer Mach. Am., Inc., 994 F. Supp. 350, 381 (W.D.N.C. 1997) ("Willfulness in performing the act . . . does not necessarily mean willfulness in violating the law.  Willfulness in violating the law may qualify the case as exceptional" (citation omitted)); accord Badger Meter, 13 F.3d at 1159 ("We do not agree that intentionally copying a competitor's product, even if this is later determined to involve trade dress infringement, by itself constitutes 'willful' infringement

23

. . .”); Tex. Pig Stands, Inc. v. Hard Rock Cafe Int'l, Inc., 951 F.2d 684, 696-97 (5th Cir. 1992) (noting that the attorneys fees provision in § 1117(a) “has been interpreted by courts to require a showing of a high degree of culpability on the part of the infringer”). To affirm the district court's application of its volitional standard would mean that every Lanham Act case would qualify as “exceptional” unless the defendant could show that it unintentionally or mistakenly performed the actions later found to be a violation of the Act.

More importantly, after the court had received the parties' briefs in this case, the Supreme Court handed down its decision in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014). While Octane Fitness did not construe § 1117(a), it did construe a parallel and identical provision in the Patent Act, which provides, “The court in exceptional cases may award reasonable attorney fees to the prevailing party.” 35 U.S.C. § 285. The Federal Circuit had previously given § 285 a narrow interpretation, concluding:

> A case may be deemed exceptional when there has been some material inappropriate conduct related to the matter in litigation, such as willful infringement, fraud or inequitable conduct in procuring the patent, misconduct during litigation, vexatious or unjustified litigation, conduct that violates Fed. R. Civ. P. 11, or like infractions. Absent misconduct in conduct of the litigation or in securing the patent, sanctions may be imposed against the patentee only if both (1) the litigation is brought in subjective bad faith, and (2) the litigation is objectively baseless.

24

Brooks Furniture Mfg., Inc. v. Dutailier Int'l, Inc., 393 F.3d 1378, 1381 (Fed. Cir. 2005) (citation omitted). But the Supreme Court rejected the Federal Circuit's interpretation of "exceptional," describing the Federal Circuit's test as "unduly rigid." Octane Fitness, 134 S. Ct. at 1755. Relying on the statute's simple text and dictionary definitions of "exceptional," the Court concluded:

> [A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated. District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances.

Id. at 1756. The Court then pointed the district courts to the same nonexclusive list of factors that it had previously identified as relevant for use in determining whether to award attorneys fees under a similar provision of the Copyright Act, a list that included "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 1756 n.6 (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 534 n.19 (1994)) (internal quotation marks omitted).

To be sure, the Octane Fitness Court did not interpret the attorneys fees provision of § 1117(a). But the language of

25

§ 1117(a) and § 285 is identical, and we conclude that there is no reason not to apply the Octane Fitness standard when considering the award of attorneys fees under § 1117(a). See Fair Wind Sailing, Inc. v. Dempster, 764 F.3d 303, 314-15 (3d Cir. 2014) ("While Octane Fitness directly concerns the scope of a district court's discretion to award fees for [an] 'exceptional' case under § 285 of the Patent Act, the case controls our interpretation of [§ 1117(a)]. Not only is § 285 identical to [§ 1117(a)], but Congress referenced § 285 in passing [§ 1117(a)]").

Thus, we conclude that a district court may find a case "exceptional" and therefore award attorneys fees to the prevailing party under § 1117(a) when it determines, in light of the totality of the circumstances, that (1) "there is an unusual discrepancy in the merits of the positions taken by the parties," Fair Wind Sailing, 764 F.3d at 315, based on the non-prevailing party's position as either frivolous or objectively unreasonable, see Octane Fitness, 134 S. Ct. at 1756 n.6; (2) the non-prevailing party "has litigated the case in an 'unreasonable manner,'" Fair Wind Sailing, 764 F.3d at 315 (quoting Octane Fitness, 134 S. Ct. at 1756); or (3) there is otherwise "the need in particular circumstances to advance considerations of compensation and deterrence," Octane Fitness,

26

134 S. Ct. at 1756 n.6 (quoting Fogerty, 510 U.S. at 534 n.19) (internal quotation marks omitted).

Because the district court did not have the benefit of the Octane Fitness standard when considering whether Georgia-Pacific was entitled to attorneys fees under § 1117(a), we vacate the court's award of attorneys fees and remand the question for further consideration in light of this standard.

V

Finally, the district court awarded Georgia-Pacific prejudgment interest in the amount of $204,450, based on its conclusion that this was an "exceptional" case. Georgia-Pacific, 2013 WL 3923984, at *3.

von Drehle contends that the district court erred in awarding prejudgment interest because (1) prejudgment interest is not an available remedy under 15 U.S.C. § 1117(a), and (2) in any event, this is not an "exceptional" case.

Section 1117, authorizing monetary relief for trademark infringement, particularizes in considerable detail the types of monetary relief available for trademark infringement and defines the criteria for awarding each type. It thus authorizes, in specified circumstances, awards of (1) the defendant's profits; (2) the plaintiff's damages; (3) court costs; (4) attorneys fees; (5) treble profits or treble damages; (6) prejudgment

27

interest; and (7) statutory damages. Because Congress legislated with great precision in providing when each particular type of monetary relief is available, it is appropriate to conclude that if Congress provided for a certain type of monetary relief only in a given specified circumstance, that type of relief is not available in other circumstances. For example, in § 1117(a), a plaintiff may be awarded the defendant's profits based only on proof of the defendant's sales, subject to a specific adjustment when necessary to compensate for an inadequate or an excessive award of profits. Yet in § 1117(b), a plaintiff may be awarded three times the defendant's profits when the specific criteria of § 1117(b) are satisfied. Similarly, as relevant here, § 1117(b) authorizes an award of prejudgment interest in cases involving the knowing and intentional use of a counterfeit mark, but § 1117 makes no express provision for prejudgment interest in other circumstances.

To be sure, as a general matter, prejudgment interest may be awarded at the district court's discretion unless the applicable statute provides otherwise. See Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc). But when, as here, a statute provides particularized forms of monetary relief and explicitly authorizes prejudgment interest in some circumstances but not others, we conclude that

28

prejudgment interest is not intended to be awarded except as provided in the statute. See <u>Moscow Distillery Cristall v. Pepsico, Inc.</u>, Nos. 96-36217, 96-36249, 96-36250, 1998 WL 101696, at *3 (9th Cir. Mar. 9, 1998) ("Prejudgment interest is available under the Lanham Act only for counterfeiting . . ." (citing 15 U.S.C. § 1117(b))). As relevant here, § 1117(a) makes no specific provision for prejudgment interest in cases involving a recovery of a defendant's profits, nor does prejudgment interest itself constitute a profit, as that term is generally used.

We recognize that at least one court has authorized prejudgment interest under § 1117(a) in an "exceptional" case. See <u>Am. Honda Motor Co. v. Two Wheel Corp.</u>, 918 F.2d 1060, 1064 (2d Cir. 1990). But we can find no support for its conclusion in the text of the statute. Indeed, § 1117(a) employs the "exceptional case" standard only for an award of attorneys fees, not prejudgment interest.

That said, we do not categorically foreclose an award of prejudgment interest under § 1117(a) as an element of a <u>damages</u> award in a trademark infringement case. To be sure, one's loss of the use of a particular sum of money over a period of time causes damage, for which the law generally allows an award of prejudgment interest. See generally <u>Monessen Sw. Ry. Co. v. Morgan</u>, 486 U.S. 330, 335 (1988) ("Prejudgment interest is

29

normally designed to make the plaintiff whole and is part of the actual damages sought to be recovered"); Johnson v. Cont'l Airlines Corp., 964 F.2d 1059, 1063 (10th Cir. 1992) ("[P]rejudgment interest is an integral element of compensatory damages . . ."). But, in this case, Georgia-Pacific did not undertake to prove its own damages, claiming instead only a disgorgement of von Drehle's gross profits.

For these reasons, we reverse the district court's award of prejudgment interest to Georgia-Pacific.

## VI

In sum, we vacate the district court's injunction and its award of attorneys fees and remand for further proceedings consistent with this opinion. We reverse its awards of treble damages (leaving in place the jury's award of profits) and prejudgment interest.

IT IS SO ORDERED.

SHEDD, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority except for its unnecessary restriction of the nationwide injunction entered by the district court in response to von Drehle Corporation's unlawful actions.[1] In 2013, we affirmed a jury verdict in favor of Georgia-Pacific Consumer Products, LP on its contributory infringement claim against von Drehle, and we remanded the case for further proceedings, including consideration of Georgia-Pacific's request for injunctive relief. Despite the fact that Georgia-Pacific had by that time lost similar litigation in the Eighth and Sixth Circuits, we rejected von Drehle's belated attempt to assert claim and issue preclusion as affirmative defenses, and we also found that there were no "special circumstances" (including comity) permitting the district court to raise the preclusion defenses sua sponte. On remand, the district court permanently enjoined von Drehle from interfering with Georgia-Pacific's trademark rights. The parties agree that the scope of the injunction is nationwide.

Viewing this appeal under our normal standard of review, the district court did not abuse its broad equitable discretion by entering a nationwide injunction. The majority's contrary

---

[1]Despite my partial concurrence, I do not agree with the majority's assertion that "von Drehle reasonably believed that its [infringing] conduct was lawful." Majority Op., at 23.

31

decision, limiting the scope of the injunction to the states within this circuit, is based on misapplication of the discretionary doctrine of comity; fails to accord proper respect to our 2013 opinion; and runs counter to a fundamental purpose of the Lanham Act, which is "to provide national protection for trademarks used in interstate and foreign commerce." Park 'N Fly, Inc. v. Dollar Park and Fly, Inc., 469 U.S. 189, 193 (1985). The result of the majority's opinion is that Georgia-Pacific will be deprived of the complete and effective relief to which it is entitled, and von Drehle, relying on that opinion, will believe that it is permitted to continue interfering with Georgia-Pacific's trademarks in 45 states. The Lanham Act authorizes federal courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable," 15 U.S.C. § 1116(a), but there is nothing equitable or reasonable about this result, and its peculiarity is self-evident, see, e.g., United States Jaycees v. Philadelphia Jaycees, 639 F.2d 134, 142 (3rd Cir. 1981) ("Protection of infringers is not a purpose of the Lanham Act. On the contrary, the Act's objective is the protection of the trademark and the public.").

I

We have previously detailed the history of this and related litigation. See Georgia-Pacific Consumer Prods., LP v. von

32

Drehle Corp., 618 F.3d 441 (4th Cir. 2010) ("Georgia-Pacific I"); Georgia-Pacific Consumer Prods., LP v. von Drehle Corp., 710 F.3d 527 (4th Cir.) ("Georgia-Pacific II"), cert. denied, 134 S.Ct. 393 (2013). I will highlight certain aspects of this litigation history to better explain my disagreement with the majority's decision.

Since the early 2000s, Georgia–Pacific has manufactured and marketed throughout the country a touchless paper towel dispenser under the "enMotion" product line. The dispenser is designed for use in the "away-from-home" restroom market, and Georgia-Pacific owns several federally registered trademarks associated with the enMotion line. The Georgia-Pacific dispenser was different in size and dimensions from competing dispensers, and Georgia-Pacific developed high-quality paper towels that were designed specifically for use in the Georgia-Pacific dispensers. Georgia-Pacific leased its dispensers to distributors. The leases between Georgia–Pacific and its distributors, and the subleases that the distributors were required to enter into with end-user customers such as hotels and restaurants, stipulated that only Georgia-Pacific paper towels were to be used in the dispensers.

In July 2005, Georgia-Pacific filed this lawsuit against von Drehle in the Eastern District of North Carolina asserting several claims for relief, including one for contributory

33

trademark infringement in violation of 15 U.S.C. § 1114(1).[2] The gist of the contributory infringement claim is that von Drehle, a North Carolina corporation with its principal place of business in Hickory, North Carolina, manufactured and marketed nationally a line of paper towels (sometimes referred to as "the 810-B paper towels") that were designed for use in Georgia-Pacific's paper towel dispensers. "The von Drehle paper towels were inferior in quality to the [Georgia-Pacific] paper towels, but von Drehle and its distributors marketed the von Drehle paper towels as a cheaper alternative for use in the [Georgia-Pacific] dispensers, a practice known in the industry as 'stuffing.'" Georgia-Pacific II, 710 F.3d at 529.

Partially due to an erroneous summary judgment ruling in von Drehle's favor, which we vacated in our 2010 Georgia-Pacific I decision, over six years elapsed before Georgia-Pacific was able to present its contributory trademark infringement claim to a jury. During a January 2012 trial, the jury found in Georgia-Pacific's favor and awarded damages in the amount of $791,431, which represent "all of the profits that von Drehle earned from

---

[2] See Inwood Labs., Inc. v. Ives Labs., Inc., 456 U.S. 844, 854 (1982) ("[I]f a manufacturer or distributor intentionally induces another to infringe a trademark, or if it continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, the manufacturer or distributor is [contributorily] responsible for any harm done as a result of the deceit." (emphasis added)).

34

the sale of its 810-B paper towels from 2005 to the date of trial." Majority Op., at 4. In the damages award, no distinction has ever been made between the profits earned from von Drehle's sales within or outside the Fourth Circuit.

Initially, Georgia-Pacific's victory was short-lived. Two months after trial, the North Carolina district court (acting on von Drehle's motion and sua sponte) set aside the jury verdict and granted judgment as a matter of law to von Drehle based on grounds of claim and issue preclusion. See Georgia-Pacific Consumer Prods., LP v. von Drehle Corp., 856 F.Supp.2d 750 (E.D.N.C. 2012). The court's decision stemmed from the judgments in two related cases filed by Georgia-Pacific against von Drehle distributors. In both cases, Georgia-Pacific asserted, among other things, a claim for contributory trademark infringement based on these distributors' marketing of the von Drehle paper towels for use in Georgia-Pacific's dispensers.[3]

---

[3]Von Drehle has criticized Georgia-Pacific's "multi-front litigation" strategy, but "[e]ffective enforcement of trademark rights is left to the trademark owners and they should, in the interest of preventing purchaser confusion, be encouraged to enforce trademark rights." Scotch Whisky Ass'n v. Majestic Distilling Co., 958 F.2d 594, 599 (4th Cir. 1992) (internal punctuation and citation omitted). Moreover, under the majority's view that the nationwide injunction is inappropriate, Georgia-Pacific will be required to engage in a multi-front strategy in the future to protect its trademark rights.

35

Georgia-Pacific filed the first of these cases in September 2008 - more than three years after it filed this action - in the Western District of Arkansas against Myers Supply, Inc. In July 2009, while the original case against von Drehle was pending in the North Carolina district court, the Arkansas district court conducted a bench trial and ruled against Georgia-Pacific. Applying a different legal analysis than the one we set forth in Georgia-Pacific I, see Georgia-Pacific II, 710 F.3d at 531 n.5, the Arkansas district court determined that Myers Supply was aware that its customers were "stuffing" von Drehle paper towels into Georgia-Pacific's dispensers, but the stuffing did not create a likelihood of confusion as to the origin of the paper towels and, therefore, did not constitute trademark infringement. The Eighth Circuit subsequently affirmed the Arkansas district court decision. See Georgia-Pacific Consumer Prods. LP v. Myers Supply, Inc., 621 F.3d 771 (8th Cir. 2010).

Georgia-Pacific filed the second action in May 2009 against Four-U-Packaging, Inc. in the Northern District of Ohio. In November 2011, shortly before trial in the North Carolina district court, the Ohio district court granted summary judgment against Georgia-Pacific, holding that the action was barred by the judgment in the Myers Supply case. See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 821 F.Supp.2d 948 (N.D. Ohio 2011). In December 2012, while Georgia-Pacific's

36

appeal of the North Carolina district court's decision to grant judgment as a matter of law to von Drehle was pending in this Court, the Sixth Circuit affirmed the Ohio district court decision. See Georgia-Pacific Consumer Prods. LP v. Four-U-Packaging, Inc., 701 F.3d 1093 (6th Cir. 2012). The Sixth Circuit based its ruling in part on the fact that the North Carolina district court had set aside the jury verdict against von Drehle and dismissed the case. The Sixth Circuit explained that a primary goal of issue preclusion "is to 'foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions,'" and it concluded that "[b]ecause judgment in Georgia-Pacific's favor was set aside, application of issue preclusion in this case poses no risk of creating inconsistent rulings." Id. at 1103 (quoting Montana v. United States, 440 U.S. 147, 153–54 (1979)).

At the time, the Sixth Circuit's observation about the status of the North Carolina district court case was accurate. However, four months after the Sixth Circuit's decision, we held in Georgia-Pacific II that the North Carolina district court erred in setting aside the jury verdict and awarding judgment in favor of von Drehle. We first concluded that von Drehle waived the preclusion defenses by not asserting them in a timely manner and, therefore, the district court abused its discretion by considering them. As we explained, von Drehle's counsel had been

37

immediately notified of the 2009 Arkansas district court decision in Myers Supply, but von Drehle waited approximately 480 days before attempting to amend its answer to assert preclusion as an affirmative defense.

More pertinent to the comity issue on which the majority relies, we also held that the North Carolina district court erred by considering the preclusion defenses sua sponte. Notably, von Drehle specifically argued to us that the district court was empowered to act sua sponte "where, as here, all relevant data and legal records are before the court and the demands of comity, continuity in the law, and essential justice mandate judicial invocation of the principles of res judicata." Brief of Appellee, No. 12-1444, at 30 (4th Cir. Sept. 6, 2012) (emphasis added) (internal punctuation and citation omitted). Further, von Drehle argued that "[i]n raising preclusion on its own motion as an independent ground for dismissal, the trial court was protecting not just itself, but also the entire judiciary. . . ." Id. at 31.

We recognized that sua sponte consideration of a preclusion defense may be appropriate in "'special circumstances,'" such as when a court is on notice that it has previously decided the issue in another case and raises the defense to avoid "'unnecessary judicial waste.'" Georgia-Pacific II, 710 F.3d at 535 (quoting Ariz. v. Calif., 530 U.S. 392, 412 (2000)).

38

However, despite von Drehle's invocation of the doctrine of comity and the need to protect "the entire judiciary," we found that "von Drehle [had] not identified [any] 'special circumstance' justifying the district court's unusual action." Georgia-Pacific II, 710 F.3d at 535. We explained that "this case was particularly ill-suited for sua sponte consideration of preclusion defenses that were known long before trial, given that the issue of trademark infringement already had been decided by the jury. Thus, the district court's sua sponte consideration of the preclusion defenses actually wasted judicial resources, rather than sparing them." Id.

Finally, we also observed that by relying on Myers Supply as grounds for setting aside the jury verdict, the district court violated the mandate rule because it failed to "implement both the letter and spirit" of the mandate of Georgia-Pacific I. Georgia-Pacific II, 710 F.3d at 536 n.13. For all of these reasons, we remanded this case "with the specific instruction that the district court reinstate the jury verdict in favor of Georgia–Pacific and consider Georgia–Pacific's requests for injunctive and other appropriate relief." Id. at 536.

Von Drehle petitioned for panel rehearing or rehearing en banc arguing, among other things, that "[a]voiding conflict with sister circuits is especially important," and the panel's waiver analysis "violates principles of comity, fairness, and justice."

39

Pet. for Reh'g or Reh'g En Banc, No. 12-1444, at 10 (4th Cir. Mar. 28, 2013) (emphasis added). Further, von Drehle again invoked "the demands of comity" in seeking to justify the district court's sua sponte consideration of the preclusion defenses, and it noted that "[u]nder the panel's holding, there will now be years of litigation as [Georgia-Pacific] invokes the result here and seeks to apply it to new and pending cases, seeking to undo the decisions in Myers, Four-U, and the two Courts of Appeals that have affirmed those decisions." Id. at 15. Von Drehle concluded that it "is difficult to imagine a result less conducive to judicial efficiency or less respectful of the decisions of coordinate courts that have previously addressed the identical dispute." Id. The rehearing petition was denied. Von Drehle subsequently asserted comity as a ground warranting review in its unsuccessful petition for certiorari review of the Georgia-Pacific II decision. See Pet. for Writ of Cert., No. 13-41, at 22-25 (U.S. July 8, 2013).

On remand to the North Carolina district court, the parties briefed and argued whether Georgia-Pacific is entitled to injunctive relief and, if so, what the scope of that relief should be. Regarding the scope, von Drehle argued (among other things) that any injunction "should be narrowly tailored to protect the legitimate rights of von Drehle and its distributors" and "must account for the rulings of the Eighth

and Sixth Circuits and for [Georgia-Pacific's] position that each distributor and each state are different." von Drehle Corp.'s Response in Opp. to Georgia-Pacific's Renewed Mot. for Perm. Inj., No. 5:05cv478-BO(1), at 16 (E.D.N.C. May 24, 2013). However, despite specifically arguing in the Georgia-Pacific II appeal and petition for certiorari review that the doctrine of comity factors in this case, von Drehle does not appear to have specifically invoked comity as a basis for denying or limiting injunctive relief.[4]

Following full briefing and a hearing, the North Carolina district court granted Georgia-Pacific's motion for injunctive relief. Applying the proper legal test, which it gleaned from eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006), the court found: (1) Georgia-Pacific "suffered irreparable injury to its trademark and the reputation of its enMotion brand" by von Drehle's infringing activities, which prevented Georgia-Pacific "from controlling the quality of paper towels dispensed from its enMotion dispensers and further confused and deceived customers;" (2) the jury award is inadequate as it would not

---

[4]In addition to not arguing comity per se before the North Carolina district court, von Drehle did not cite to any authority holding that comity warranted denial or limitation of injunctive relief. This fact stands in contrast to von Drehle's argument to us. See Appellant's Opening Brief, at 50-56 (citing Va. Soc'y for Human Life, Inc. v. FEC, 263 F.3d 379 (4th Cir. 2001), and arguing that the injunction "violates this Court's precedent and basic principles of comity").

prevent von Drehle "from continu[ing] to infringe in the future, policing [von Drehle's] sales of its paper towels would be onerous, and [von Drehle] has asserted throughout that its actions did not constitute trademark infringement;" (3) the balance of hardship favors Georgia-Pacific as von Drehle's "activities have been found to have infringed [Georgia-Pacific's] trademarks and [von Drehle] has no equitable interest in perpetrating trademark infringement;" and (4) "the public interest is best served by a permanent injunction that would prevent further trademark infringement." J.A. 854 (internal punctuation and citations omitted). Based on these findings, the court enjoined von Drehle "from interfering directly or indirectly" with Georgia-Pacific's trademark rights and specified that "any deliberate or purposeful placement" of von Drehle's paper towels in Georgia-Pacific's enMotion dispensers "shall constitute a violation of this permanent injunction." J.A. 855.

II

"A federal court has broad power to restrain acts which are of the same type or class as unlawful acts which the court has found to have been committed or whose commission in the future unless enjoined, may fairly be anticipated from the defendant's conduct in the past." NLRB v. Express Pub. Co., 312 U.S. 426, 435 (1941). As a general rule, a federal court's injunctive

order "operate[s] continuously and perpetually upon the [party] in relation to the prohibited conduct," and it extends "throughout the United States." Leman v. Krentler-Arnold Hinge Last Co., 284 U.S. 448, 451 (1932).

The Lanham Act reflects this broad power, authorizing federal courts to issue injunctive relief to a prevailing plaintiff "according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116(a). When trademark infringement has been proven, "an injunction is the preferred remedy to insure that future violations will not occur," Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 939 (4th Cir. 1995) (internal punctuation and citation omitted), and it should be crafted to provide complete relief to the plaintiff, PBM Prods, LLC v. Mead Johnson & Co., 639 F.3d 111, 128 (4th Cir. 2011). The "scope of injunctive relief is dictated by the extent of the violation established," Califano v. Yamasaki, 442 U.S. 682, 702 (1979), and the Lanham Act authorizes a district court to enter a nationwide injunction prohibiting trademark infringement, see Majority Op., at 11.

A trademark plaintiff who is entitled to injunctive relief "is entitled to effective relief; and any doubt in respect of the extent thereof must be resolved in its favor as the innocent producer and against the [defendant], which has shown by its conduct that it is not to be trusted." William R. Warner & Co.

43

v. Eli Lilly & Co., 265 U.S. 526, 532 (1924). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." eBay, Inc., 547 U.S. at 391. Under this standard, we are not at liberty to disturb an injunction simply because we would have decided the matter differently in the first instance. Centro Tepeyac v. Montgomery County, 722 F.3d 184, 188 (4th Cir. 2013) (en banc). Instead, we may find an abuse of discretion only if the court applied an incorrect injunction standard, rested its decision on a clearly erroneous finding of a material fact, or misapprehended the law with respect to underlying issues in litigation. Id.

Viewing this appeal properly and under this standard, the district court did not abuse its discretion. The court applied the correct injunction standard, did not rely on a clearly erroneous finding of material fact, and did not misapprehend the law with respect to the underlying issues of this case. Notably, the majority does not challenge the court's determination that injunctive relief is necessary to provide complete relief to Georgia-Pacific for von Drehle's infringing activities; does not quarrel with the language of the injunction order prohibiting von Drehle "from interfering directly or indirectly" with Georgia-Pacific's trademark rights and specifying that "any deliberate or purposeful placement" of von Drehle's paper towels

44

in Georgia-Pacific's enMotion dispensers "shall constitute a violation of this permanent injunction;" and does not assert that the evidence presented below fails to support the court's determination that a nationwide injunction is warranted.

Instead, relying on the doctrine of comity, the majority holds that the nationwide scope of the injunction is overbroad under the circumstances of this case. In the majority's view, the injunction should not extend to the Eighth and Sixth Circuits, which (respectively) decided Myers Supply and Four-U-Packaging, because that "would amount to a direct and unseemly affront to those courts" and would "create a direct and perhaps irreconcilable conflict as to Georgia-Pacific's trademark rights [in those circuits], leaving litigants and others in those States confused." Majority Op., at 13. The majority extends its limitation on the injunction to the remainder of the federal circuits (other than the Fourth Circuit) because courts in those circuits – when presented with litigation involving Georgia-Pacific's trademarks – "would be faced with the question of whether to follow the Fourth Circuit on the one hand or the Eighth and Sixth Circuits on the other." Id. at 13-14.

The doctrine of comity is "not a rule of law, but one of practice, convenience, and expediency." Mast, Foos, & Co. v. Stover Mfg. Co., 177 U.S. 485, 488 (1900). "It is something more than mere courtesy, which implies only deference to the opinion

45

of others, since it has a substantial value in securing uniformity of decision, and discouraging repeated litigation of the same question. But its obligation is not imperative." Id. (emphasis added). Although "comity governs relations between courts of the same sovereign," Ulmet v. United States, 888 F.2d 1028, 1031 (4th Cir. 1989), the rule is rarely applied in this context, and only when it is essential to avoid "an unnecessary burden on the federal judiciary" and to prevent "the embarrassment of conflicting judgments." In re Naranjo, 768 F.3d 332, 348 (4th Cir. 2014) (internal punctuation and citation omitted).

In this context, comity is closely akin to the doctrines of issue and claim preclusion, see Allen v. McCurry, 449 U.S. 90, 95-96 (1980) (explaining that "res judicata and collateral estoppel not only reduce unnecessary litigation and foster reliance on adjudication, but also promote the comity between state and federal courts that has been recognized as a bulwark of the federal system"). Like those doctrines, "[c]omity works most efficiently where previously filed litigation is brought promptly to the attention of the district court, and the court defers," Church of Scientology of Cal. v. U.S. Dept. of Army, 611 F.2d 738, 750 (9th Cir. 1980).

III

The majority's limitation of the scope of the injunction to the five states within this circuit deprives Georgia-Pacific of the complete and effective relief to which it is entitled. I have concerns generally about utilizing the doctrine of comity in this manner. See United States v. Gillock, 445 U.S. 360, 373 (1980) (noting that "where important federal interests are at stake, . . . comity yields"); Nelson v. Berry, 59 F.2d 351, 353 (Ct. Cust. and Pat. App. 1932) (noting that when applying the doctrine of comity, "courts are not at liberty to disregard rights which the law assures to litigants"). However, I will limit my discussion to two specific reasons why I believe the majority has erred.

First, in Georgia-Pacific II, we rejected application of the comity doctrine in this litigation. As noted, by the time we decided Georgia-Pacific II, both the Eighth and Sixth Circuits had resolved the Myers Supply and Four-U-Packaging cases, and we were presented squarely with the question of whether "special circumstances" existed to warrant the district court's sua sponte consideration of von Drehle's preclusion defenses based on those cases. Despite von Drehle's invocation of the comity doctrine, we held that no "special circumstances" justified the district court's action. In other words, in what some could consider to have been the creation of an "embarrassment of

conflicting judgments," see In re Naranjo, 768 F.3d at 348, and "a direct and unseemly affront" to the Sixth and Eighth Circuits, Majority Op., at 13, we rejected "the demands of comity," Brief of Appellee, No. 12-1444, at 30 (4th Cir. Sept. 6, 2012), allowed the jury verdict in favor of Georgia-Pacific to stand, and remanded the case for the district court to consider Georgia-Pacific's request for injunctive and other relief.

Of course, the injunction per se was not then before us, but the same comity concerns now raised by von Drehle and the majority were. Given that we had previously admonished the district court of its obligation to "implement both the letter and spirit" of our mandate, Georgia-Pacific II, 710 F.3d at 536 n.13, it is hardly surprising that the court determined that the comity doctrine had no bearing on the scope of injunctive relief to which Georgia-Pacific is entitled. Indeed, our rejection of the comity doctrine arguably had become – and remains - the law of the case. See Winston v. Pearson, 683 F.3d 489, 498 (4th Cir. 2012) (explaining law of the case doctrine). Under these circumstances, where von Drehle barely argued (if at all) comity in opposition to the injunction request and the court's injunction order is entirely consistent with our mandate, the court did not abuse its discretion.

Second, and in any event, the comity doctrine applied by the majority simply has no bearing in this case. Georgia-Pacific proved at trial that von Drehle infringed on its trademark rights on a national scale, we affirmed that judgment in Georgia-Pacific II, and the nationwide injunction prohibits von Drehle – and no one else – from further infringement. Like all injunction cases, the district court retains the power to enforce its injunction against von Drehle by contempt proceedings, but it has no authority under the injunction to command any other party (or any court) with respect to Georgia-Pacific's trademarks.[5]

Nothing about this rather ordinary process undermines the law in any other circuit, where any party other than von Drehle is currently permitted (at their own risk) to "stuff" Georgia-Pacific's dispensers. If Georgia-Pacific chooses to litigate its trademark rights against other parties in other circuits, the nationwide injunction will not preclude courts in those circuits from deciding all pertinent issues, including trademark and

---

[5]Under the majority's rationale, I cannot help but wonder when my colleagues would ever uphold a nationwide injunction. Anytime such an injunction is entered, the argument could be made that the injunction interferes with other courts' ability to decide the matter at issue.

preclusion issues.[6] Of course, those courts will be presented with the so-called "embarrassment" of the conflicting circuit court judgments, but that circumstance arose when we filed Georgia-Pacific II, not when the district court enjoined von Drehle, and it remains in existence regardless of whether the injunction is limited or not.[7]

The facts and circumstances of this case differ from Virginia Society for Human Life, a case in which we vacated a nationwide injunction based on the comity doctrine. There, an issue advocacy group sued the Federal Election Commission ("FEC") seeking a declaration that a particular regulation was unconstitutional. The district court held that the regulation was unconstitutional and issued a nationwide injunction preventing the FEC from enforcing the regulation. We found the injunction to be overbroad for two reasons. First, we concluded

---

[6]In that event, under the generally prevailing "last in time" rule, the later judgment – i.e., Georgia-Pacific II - would likely be accorded preclusive effect. See, e.g., Fresenius USA, Inc. v. Baxter Int'l, Inc., 721 F.3d 1330, 1347 n.14 (Fed. Cir. 2013) (noting that where final judgments conflict, "the settled rule is that the later judgment, not the earlier, has preclusive force going forward").

[7]Contrary to the majority's concern, the "conflict" between the various judgments is not necessarily unseemly. As the Supreme Court has explained: "Although the application of a federal statute such as the Lanham Act by judges and juries in courts throughout the country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy to ensure fair competition." POM Wonderful, LLC v. Coca-Cola Co., 134 S.Ct. 2228, 2239 (2014).

50

that the injunction was "broader than necessary to afford full relief" to the advocacy group because a limited injunction adequately protected the group. 263 F.3d at 393. Second, we concluded that the injunction had "the effect of precluding other circuits from ruling on the constitutionality" of the regulation because it prohibited the FEC from attempting to enforce it. Id. Unlike Virginia Society for Human Life, the nationwide injunction before us is necessary to provide complete relief to Georgia-Pacific, and as I have explained, the injunction does not preclude other courts from ruling on the propriety of the "stuffing" practice of parties other than von Drehle in relation to Georgia-Pacific's trademarks.

IV

One final observation is in order. Even though I believe that it is unfair to deny Georgia-Pacific the nationwide injunctive relief to which it is entitled, I question whether the limitation of injunctive relief to the states within this circuit ultimately will protect von Drehle from liability in future litigation.

As noted, von Drehle is a North Carolina corporation that operates out of Hickory, North Carolina. Georgia-Pacific has proven in this case that von Drehle's manufacturing and marketing activities, that emanated from North Carolina but caused infringement nationally, constitute contributory

51

trademark infringement. Presumably, if von Drehle is freed from the nationwide constraints of the injunction, it will resume its North Carolina-based activities of manufacturing paper towels and marketing them to distributors with knowledge that the towels will be stuffed into Georgia-Pacific's dispensers. Although von Drehle may limit its distribution of paper towels to entities outside of the Fourth Circuit in an effort to comply with a limited injunction, it will nonetheless be engaging in the very conduct (i.e., manufacturing and marketing) that gave rise to its liability in this case, and it will be doing so within the Fourth Circuit, where such conduct is prohibited.

Therefore, unless von Drehle relocates its manufacturing and marketing activities outside of this circuit, it seems reasonable to believe that any future distribution of paper towels for the purpose of stuffing Georgia-Pacific's dispensers anywhere would violate even the limited injunction called for by the majority, and Georgia-Pacific would be entitled to seek contempt relief. Moreover, even assuming that such conduct would not violate a limited injunction, there seems to be no reason that Georgia-Pacific could not file another lawsuit similar to this one seeking damages, and the lack of a nationwide injunction would not preclude Georgia-Pacific from recovering all of the profits von Drehle earned anywhere in the nation as a result of its infringing activities.

52

V

Georgia-Pacific is entitled to complete and effective injunctive relief to prevent von Drehle from continuing to infringe on its trademarks. The district court considered the proper factors and concluded that a nationwide injunction is necessary to provide this relief. Because the district court did not abuse its discretion in reaching this conclusion, and because we should accord proper respect to our decision in Georgia-Pacific II, we should affirm the injunction. Accordingly, I concur in part and dissent in part.