**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────────

**No. 15-2339**

─────────────────

EXCLAIM MARKETING, LLC,

    Plaintiff - Appellant,

  v.

DIRECTV, LLC,

    Defendant – Appellee,

and

DIRECTV OPERATIONS, LLC; DIRECTV, INCORPORATED,

    Defendants.

─────────────────

**No. 15-2399**

─────────────────

EXCLAIM MARKETING, LLC,

    Plaintiff – Appellee,

  v.

DIRECTV, LLC,

    Defendant – Appellant,

and

DIRECTV, INCORPORATED; DIRECTV OPERATIONS, LLC,

    Defendants.

─────────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:11-cv-00684-FL)

Argued: October 28, 2016          Decided: December 29, 2016

Before SHEDD, AGEE, and WYNN, Circuit Judges.

Affirmed by unpublished per curiam opinion.

**ARGUED**: Joseph H. Nanney, Jr., MEYNARDIE & NANNEY, PLLC, Raleigh, North Carolina, for Appellant/Cross-Appellee. Michael Ernest Williams, QUINN EMANUEL URQUHART & SULLIVAN, LLP, Los Angeles, California, for Appellee/Cross-Appellant. **ON BRIEF**: Robert C. Van Arnam, WILLIAMS MULLEN, Raleigh, North Carolina, for Appellee/Cross-Appellant.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

A jury awarded $760,000.00 to Exclaim Marketing, LLC, ("Exclaim") on its North Carolina Unfair and Deceptive Trade Practices Act ("UDTPA") claim against DirecTV, LLC, ("DirecTV") and $25,000.00 to DirecTV on its counterclaim for trademark infringement. Thereafter, the district court granted DirecTV's motions for judgment as a matter of law on the UDTPA claim and for an increased award of profits under the counterclaim. Exclaim appeals both of these judgments. In addition, DirecTV has filed a cross-appeal challenging the district court's denial of its motion for attorney's fees. For the reasons that follow, we affirm the judgments of the district court in their entirety.

I.

Exclaim is a nationwide marketing company that, in relevant part, acts as a liaison between potential satellite television consumers and satellite television retailers. It purchases thousands of telephone numbers that are then included in telephone directories under various listings. Often, a single Exclaim telephone number will be used in multiple listings in multiple directories. When a consumer calls the number, a telemarketer at a call center asks some screening questions and then forwards the call to one of its clients, a retailer of satellite television. These retailer-clients pay Exclaim for

3

each forwarded call, regardless of whether the consumer eventually purchases satellite television.

The retailers in turn have contracted with one or more providers of satellite television to "market, advertise, and promote" their services. Exclaim Mktg., LLC v. DirecTV, LLC (Exclaim I), 134 F. Supp. 3d 1011, 1016 (E.D.N.C. 2015). DirecTV and Dish Network are the leading satellite television providers in the United States. DirecTV's retailer contracts regulate how its retailers operate and include a restriction that DirecTV retailers can only contract with a third party -- such as Exclaim -- with DirecTV's written consent. DirecTV did not provide written authorization for its retailers to contract with Exclaim.

Although most of Exclaim's telephone directory listings are identified in generic terms such as "satellite television," some of its listings used the name "DirecTV" or a close variant such as "Direct TV" or "DIRECTTV." When DirecTV discovered the unauthorized use of its name, the company concluded that was a violation of its trademark. Accordingly, DirecTV hired an outside company to investigate who owned the listings by calling the numbers associated with them. In addition, one of DirecTV's employees also called some of the listings. At times, the callers would give the intermediary telemarketer a false name as part of their conversation. Once DirecTV identified Exclaim as

4

the owner of numbers tied to these allegedly infringing listings, DirecTV contacted Exclaim and asked that Exclaim coordinate to have the listings removed or renamed. Exclaim took steps to remove some of the listings, but over the course of several years DirecTV continued to identify unauthorized listings owned by Exclaim using DirecTV's name and its variants.

In 2011, Exclaim filed a lawsuit in North Carolina state court against DirecTV alleging that it had violated the UDTPA, N.C. Gen. Stat. § 75-1.1 et seq. On the basis of diversity jurisdiction, DirecTV removed the case to the U.S. District Court for the Eastern District of North Carolina and filed a counterclaim against Exclaim alleging trademark infringement, in violation of the Lanham Act, 15 U.S.C. § 1114.[1]

At trial, Exclaim alleged UDTPA violations arising from multiple practices, but the jury found that DirecTV only engaged in one of them. Specifically, the jury found that DirecTV "telephoned Exclaim Marketing, LLC's call center over 175 times over a six year period, at times using false names." J.A. 1743. It further found that this conduct proximately caused injury to Exclaim and that Exclaim was entitled to damages in the amount of $760,000.00.

---

[1] Other claims and counterclaims made in the course of the litigation were dismissed or otherwise resolved and are not at issue in this appeal.

On DirecTV's counterclaim, the jury found that Exclaim used DirecTV's "trademark or a misspelling of the trademark in connection with the sale, offering for sale, distribution or advertising of products or services," and that it did so "in a manner likely to cause confusion, mistake, or deception as to the source, origin, affiliation, approval, or sponsorship" of Exclaim's goods or services. J.A. 1744. The jury specifically found that Exclaim's conduct was "undertaken with the intent to confuse or deceive" and awarded DirecTV $25,000.00 for trademark infringement. J.A. 1746.

The issues on appeal arise from the district court's rulings on three post-trial motions filed by DirecTV. First, DirecTV renewed its motion for judgment as a matter of law on Exclaim's UDTPA claim, contending that its conduct did not support a UDTPA claim as a matter of law. The district court granted DirecTV's motion, concluding that the phone calls to Exclaim were not "in or affecting commerce," nor did they constitute an "unfair or deceptive" practice, both of which were required to state a UDTPA claim. Exclaim I, 134 F. Supp. 3d at 1020-25. Second, DirecTV moved for an increased profits award on its successful trademark infringement claim, contending that $25,000.00 was inadequate to account for Exclaim's wrongdoing. The district court granted that motion as well, though it awarded less than the amount DirecTV sought. The district court

6

awarded DirecTV $610,560.00 based on a calculation of the profit Exclaim derived from each infringing number over the course of Exclaim's infringement. Exclaim Mktg., LLC v. DirecTV, LLC (Exclaim II), No. 5:11-CV-684-FL, 2015 WL 5725692 (E.D.N.C. Sept. 30, 2015). Third, DirecTV moved for statutory attorney's fees in light of its successful trademark infringement verdict. The district court denied that motion, concluding no award of attorney's fees was warranted because this case did not meet the statutory requirement of being "exceptional." Exclaim Mktg., LLC v. DirecTV, LLC (Exclaim III), No. 5:11-CV-684-FL, 2015 WL 5725703 (E.D.N.C. Sept. 30, 2015).

Exclaim noted a timely appeal, as did DirecTV. We have jurisdiction under 28 U.S.C. § 1291.


II.

This case presents three issues: (1) whether the district court erred in granting DirecTV's motion for judgment as a matter of law on Exclaim's UDTPA claim; (2) whether the district court abused its discretion in increasing the jury's award of damages from $25,000.00 to $610,560.00 in profits arising from DirecTV's trademark infringement claim; and (3) whether the district court abused its discretion in denying DirecTV's motion for statutory attorney's fees as the prevailing party in the trademark infringement claim. We address each issue in turn.

7

## A. UDTPA Claim

In order to establish a claim under the UDTPA, Exclaim had to demonstrate the following elements: "(1) that [DirecTV] engaged in conduct that was in or affecting commerce, (2) that the conduct was unfair or [deceptive], and (3) that [Exclaim] suffered actual injury as a proximate result of [DirecTV's] deceptive statement or misrepresentation." See ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 122 (4th Cir. 2006).[2] The "occurrence of the alleged conduct, damages, and proximate cause are fact questions for the jury," but "whether [such] conduct was unfair or deceptive is a legal issue for the court," as is whether the conduct was "in or affecting commerce." Id. at 123; see also S. Atl. Ltd. P'ship of Tenn., LP v. Riese, 284 F.3d 518, 534 (4th Cir. 2002); Sara Lee Corp. v. Carter, 519 S.E.2d 308, 311 (N.C. 1999). Consistent with these standards, the only issues the district court submitted to the jury on the UDTPA claim were the occurrence of the individual acts, proximate cause, and injury/damages. Each of the jury's findings was left intact by the district court when it considered the purely legal issues on

---

[2] We have omitted internal quotation marks, alterations, and citations here and throughout this opinion, unless otherwise noted.

8

liability raised in DirecTV's renewed motion for judgment as a matter of law.

Consequently, we review the district court's decision to grant the motion for judgment as a matter of law de novo. Belk, Inc. v. Meyer Corp., 679 F.3d 146, 164 (4th Cir. 2012) (stating that questions of law surrounding a motion for judgment as a matter of law following a jury trial are reviewed de novo while the jury's factual findings are reviewed under a more deferential standard). Similarly, we apply the same de novo standard in reviewing the district court's interpretation of the UDTPA. Id.

The unfair or deceptive conduct element of a UDTPA claim is set out in the alternative, meaning that an act can be either unfair or deceptive to satisfy this requirement. A practice is "unfair" when "a court of equity would consider [it to be] unfair," S. Atl. Ltd. P'ship of Tenn., 284 F.3d at 535, i.e., "when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," id. at 536. A practice is "deceptive" if it "has the capacity or tendency to deceive." Id. Under either category, "only practices that involve some type of egregious or aggravating circumstances are sufficient to violate the U[D]TPA." Id. at 535.

9

Exclaim contends that DirecTV's practice was unfair because placing more than 175 calls to Exclaim was "unethical, oppressive, and unscrupulous." Opening Br. 17. Exclaim posits that DirecTV did not adequately communicate with it to remedy the problematic listings and questions why some of the calls received were tied to generic listings if the sole purpose of DirecTV's calls was to investigate potential infringement. Exclaim further contends that North Carolina recognizes that an inequitable assertion of power can constitute an unfair practice, and it asserts that is what occurred here given that DirecTV's size and resources dwarf Exclaim's. We disagree.

The district court correctly held that the evidence does not demonstrate that DirecTV's conduct was egregiously or aggravatingly unfair. As a reminder, the "practice" at issue is DirecTV's placing more than 175 phone calls over a six-year period. Although the calls to Exclaim's call centers were not spread out evenly, that frequency represents roughly 2-3 calls to Exclaim's call center each month for six years. Put another way, it equals roughly 0.002958% of Exclaim's total volume of calls. Exclaim I, 134 F. Supp. 3d at 1023.

It is questionable whether such a "practice" could ever be considered "unfair" on its own. Cf. id. ("Without more factual specificity in the jury's verdict, it is impossible to glean any unfairness from the simple fact of the telephone calls."). But

10

the record eliminates any doubt. It is not unfair to Exclaim that Exclaim's own publicly available telephone listings led DirecTV to call Exclaim's call centers. This is especially true given that DirecTV had a legitimate business purpose for placing those calls due to its investigating who owned the phone numbers associated with listings it reasonably believed infringed on its trademark. Indeed, the reasonableness of its investigatory method was admitted by Exclaim's co-owner, who testified that if he did not recognize a listing identified as "Exclaim," he, too, would call the number to determine who was associated with it. As the district court noted, "The numbers were public[]ly available and could have been called by anyone." Id.

Exclaim emphasizes, as it did at trial, that some unspecified number of calls DirecTV placed to its call center were associated with generic listings. Even assuming that to be the case, it does not render DirecTV's conduct an "unfair practice." The record demonstrates that some numbers were associated with both generic and infringing listings. Moreover, at the time DirecTV called a listing, it had no way of knowing that Exclaim owned the associated phone number, so there is no evidence that DirecTV was targeting Exclaim by calling any particular listing, whether it was generic or not. Lastly, DirecTV's employee testified that she would occasionally call generic listings for business reasons unrelated to the

11

investigation, such as to identify a retailer's ad that she did not recognize in order to determine whether the retailer was in compliance with the retailer's contract. On this record, that some unspecified number of phone calls may have been placed to numbers linked solely to generic listings does not undermine the conclusion that DirecTV's investigative effort of placing more than 175 calls to Exclaim's call center over a six-year period was not an unfair practice, let alone an egregious or aggravating one.

Exclaim's argument about DirecTV's allegedly inadequate communication to resolve the infringing listings misdirects attention from the salient inquiry -- whether placing the phone calls was an unfair practice. Again, until DirecTV placed the phone calls, it could not tie Exclaim to any specific infringing number because Exclaim was not identified on the listing. The parties' communications after a specific number had been tied to Exclaim are immaterial to whether the practice of placing calls in the first instance was unfair. More problematic for Exclaim, however, is that for years and even after republication of certain directories, DirecTV continued to find infringing listings tied to Exclaim. And so long as the problem remained, DirecTV acted fairly in calling those numbers to determine who owned them.

While an inequitable assertion of power may be part of the unfair-practice analysis in some cases, it is not at issue here. The fact of a size disparity between companies, without more, is not sufficient to demonstrate an unfair practice; rather, courts examine what the actor did in combination with that size disparity to conclude that the exertion of an inequitable assertion of power was unfair. See, e.g., S. Atl. Ltd. P'ship of Tenn., 284 F.3d at 540 (observing that "manipulations and assertions of controlling influence" such as exploiting contractual rights without providing compensation is "precisely the kind of 'inequitable assertion[]' of power" that is an unfair trade practice under the UDTPA). DirecTV may be a larger business than Exclaim, but nothing in the record indicates that this disparity enabled or contributed to the acts Exclaim complains were unfair. As the district court concluded, "[n]o superior degree of power or advantageous market position was leveraged" when DirecTV called publicly available phone numbers to determine who owned them. Exclaim I, 134 F. Supp. 3d at 1023.

The telephone calls also were not a "deceptive practice" for UDTPA purposes. Yet again, there is nothing inherently deceptive about the jury's factual finding that DirecTV placed the calls. Cf. id. at 1024 ("[T]he fact of the calls involve[d] no deception."). But even accepting that the premise of being a

13

potential consumer or the use of a false name was "deceptive," the record demonstrates that it was not egregiously or aggravatingly deceptive. The DirecTV employee at issue testified based on her past personal experience that she was often stonewalled in her efforts to identify the owner of the phone numbers she called. In particular, when she used her real name to place calls, telemarketers would be uncooperative or would be instructed to hang up when recognizing her name from past calls. DirecTV's use of the false name was thus intrinsically linked to -- and an effective means of -- investigating the source of infringing listings. As such, it did not constitute an egregiously or aggravatingly deceptive practice.

For these reasons, the district court did not err in concluding that DirecTV's placing more than 175 calls over a six-year period could not, as a matter of law, constitute an unfair or deceptive trade practice under the UDTPA. As such, DirecTV was entitled to judgment as a matter of law regardless of the jury's findings with respect to other elements of Exclaim's claim.[3]

---

[3] In light of this holding, we need not address the parties' arguments concerning the district court's additional grounds for granting DirecTV's motion, that the phone calls were not "in or affecting commerce."

B. Trademark Infringement Counterclaim

Exclaim separately contends the district court erred in granting DirecTV's post-judgment motion for increased profits on its trademark infringement claim. To establish such a claim, the Lanham Act provides that a plaintiff -- such as DirecTV -- who establishes a violation of § 1114(1)(a) is entitled "to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a) (emphasis added). The pertinent statute further provides:

> In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed. . . . If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case. Such sum . . . shall constitute compensation and not a penalty.

Id.

This Court has previously recognized that the statute "gives little guidance on the equitable principles to be applied by a court in making an award," and has "identified six factors to guide the process" of "weigh[ing] the equities of the dispute and exercis[ing] its discretion on whether an award is appropriate and, if so, the amount thereof." Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 174-76 (4th Cir. 2006). Those factors are: "(1) whether the defendant had the intent to

15

confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off." Id. at 175.

The district court granted DirecTV's motion based on its conclusion that the jury's award of $25,000.00 was insufficient in light of the infringement at issue. Under the statutory burden-shifting analysis, the district court observed that DirecTV satisfied its burden of proving Exclaim's total profits, thereby shifting to Exclaim the burden of parsing out its profits that were unrelated to the infringement. Based on the quite limited evidence put forward by Exclaim on that point, the district court concluded it had failed to meet its burden to distinguish between profits attributable to infringement and any others.[4] Nonetheless, the court concluded that "[i]t would be inequitable to award DirecTV the entirety of Exclaim's profits over the relevant period" because while Exclaim owned 6,000

_____

[4] In its reply brief, Exclaim argues DirecTV did not satisfy this burden because it demonstrated total profits, while the statute should be interpreted to require a plaintiff to show profits relating to the infringing activity. Because that argument is raised for the first time in the reply brief, we do not consider it. See Cavallo v. Star Enter., 100 F.3d 1150, 1152 n.2 (4th Cir. 1996) (holding that "an issue first argued in a reply brief is not properly before a court of appeals").

16

telephone numbers, only 159 were associated with an infringing listing.  Exclaim II, 2015 WL 5725692, at *4.  Instead, the court multiplied the 159 listings by the record evidence as to the "average profit per month per phone number" (between $75.00 and $80.00 per telephone number) over the entire period during which Exclaim was infringing DirecTV's trademark.  Id.  Under that calculation method, the district court awarded DirecTV $610,560.00.

The district court also noted that such an increased profits award was appropriate in light of the relevant Synergistic factors.  In particular, it found that Exclaim's conduct was willful, that injunctive relief did "not remedy Exclaim's usurpation of the good will associated with DirecTV's mark for the period at issue," that DirecTV's delay was reasonable considering the period of investigation and reconciliation, and that the jury's award had not been adequate to make future infringement unprofitable.  Id.

The Court reviews the district court's decision to increase an award of profits for an abuse of discretion.  Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 402 (4th Cir. 1998) (citing Fed. R. Civ. P. 59(e)).

Exclaim contends the district court abused its discretion because the record shows DirecTV suffered no harm from Exclaim's conduct and, in fact, profited because many of Exclaim's

17

referrals to retailers resulted in new DirecTV customers. Exclaim asserts that the Synergistic factors do not support the increased award of profits because Exclaim did not act in bad faith, it did not divert sales, an injunction against using DirecTV's mark adequately protects DirecTV's interests, and there is no evidence of palming off. In addition, Exclaim points to DirecTV's delay in filing suit, a period of approximately four years from when it first learned of infringing listings. Lastly, Exclaim argues that anything more than the jury's nominal damages award constitutes a windfall and unlawfully punishes Exclaim rather than compensates DirecTV.

We conclude the district court did not abuse its discretion in granting DirecTV's motion for increased profits. Many of Exclaim's arguments ignore the purpose of prohibiting trademark infringement and the Lanham Act's plain language, which allows prevailing plaintiffs to recover not just an amount they suffered in actual damages, but also a share of the defendants' profits from the infringement. Cf. 15 U.S.C. § 1117(a). The district court has broad discretion to award such relief in order to achieve an equitable result. E.g., Burndy Corp. v. Teledyne Indus., 748 F.2d 767, 772 (2d Cir. 1984).

Here, the district court did not abuse its discretion in concluding that the Synergistic factors favored an increased profits award. For example, the jury specifically found that

18

Exclaim intended to confuse or deceive consumers by using DirecTV's trademark. See Synergistic, 470 F.3d at 175 (stating a defendant's "intent to confuse or deceive" can support a profits award). In addition, an injunction did not provide any relief for Exclaim's past wrongdoing and would also be unlikely to adequately deter future misconduct given the scope of Exclaim's past misconduct and its proven profitability for Exclaim. Cf. id. at 176. The district court also reasonably rejected Exclaim's argument that DirecTV unreasonably delayed filing suit and thus should not be entitled to increased profits. In so doing, the court observed that DirecTV undertook an extensive investigation, attempted to resolve the matter without litigation, and had to wait for new telephone directories to be released in order to determine whether infringement continued. Cf. id. The district court thus not only relied on the proper analysis for determining whether to award increased profits, but also did not abuse its discretion in weighing the relevant circumstances and concluding that increased profits were appropriate. Cf. id.

In addition to challenging any increase from the jury's award for Exclaim's infringement, Exclaim also argues that the record does not support the district court's decision to award profits in the amount of $610,560.00. It contends the evidence presented at trial did not show that Exclaim owned 159

19

infringing phone numbers, but only nine numbers, and that the district court relied on evidence that was not in the record to reach the higher number. In addition, Exclaim contends the record does not show that it owned all of those numbers for the entire period of time used to calculate the profits award. As such, Exclaim maintains that any increased profits award should be substantially reduced.

We have reviewed the record and conclude that no reversible error occurred. Three exhibits that were admitted at trial support the district court's attribution of 159 infringing numbers to Exclaim: an email in which Exclaim admitted to owning twenty-nine unique infringing numbers and two spreadsheets DirecTV's agent prepared compiling the results of its investigation, in which an additional 130 unique numbers were linked to Exclaim. It does appear that not all of these telephone numbers were traced to infringing listings for the entire period for which the district court awarded profits. Nonetheless, we conclude that the district court did not err in arriving at its final profits award.

As already noted, the statute authorizes the district court to exercise broad equitable discretion in arriving at an appropriate award. Coupled with this discretion is the fact that Exclaim bore the burden of showing why certain of its profits should be excluded from an award, yet it failed to

20

present relevant evidence for the district court to use in considering an appropriate profits award. Once DirecTV satisfied its statutory burden of demonstrating Exclaim's profits for the relevant period of time, the burden shifted to Exclaim to show what amount of profits were not related to its infringement. See 15 U.S.C. § 1117(a). Here, Exclaim made no attempt to meet that burden. Despite Exclaim's failure on this point, the district court went out of its way to fashion a more equitable result for both parties based on Exclaim's average profit per month per phone number. Its calculation was a reasonable estimation of the profits Exclaim unjustly received, and any minor variation in the precise number of lines per month does not make the district court's award an abuse of discretion. Indeed, the district court indicated that Exclaim's profits relating to the infringing lines might have been even higher. Exclaim II, 2015 WL 5725692, at *4 ("[DirecTV] is entitled to Exclaim's profits at least in the amount of $610,560.00." (emphasis added)). Given these circumstances, greater precision in arriving at the exact award amount was not required. See, e.g., Banjo Buddies, Inc. v. Renosky, 399 F.3d 168, 177–78 (3d Cir. 2005) (approving the district court's attempt to estimate profits where it was not clear what share came from the wrongful conduct versus other legitimate business conduct because the calculation arrived at an appropriate ballpark figure).

21

C. Attorney's Fees Cross-Appeal

We next turn to DirecTV's cross-appeal, in which it argues the district court erred in denying its motion for attorney's fees. The Lanham Act authorizes a district court to award "reasonable attorney fees to the prevailing party" in "exceptional cases." 15 U.S.C. § 1117(a). In sum, DirecTV contends that this case meets that "exceptional" standard because the jury specifically found that Exclaim "acted with 'the intent to confuse or deceive.'" Response/Opening Br. 60.

We review the district court's decision on the award of Lanham Act attorney's fees for an abuse of discretion. Newport News Holdings Corp. v. Virtual City Vision, Inc., 650 F.3d 423, 441 (4th Cir. 2011). That review leads us to conclude the district court properly applied the exceptional case analysis set out in Octane Fitness, LLC v. ICON Health & Fitness, Inc., 134 S. Ct. 1749 (2014), and expounded upon by this Court in Georgia-Pacific Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710 (4th Cir. 2015).

In Octane Fitness, the Supreme Court analyzed the same fee award standard applicable here albeit under the Patent Act. 134 S. Ct. at 1752. The Supreme Court held that the ordinary meaning of "exceptional" indicated that fees should only be awarded in a case "that stands out from others with respect to the substantive strength of a party's litigating position

22

(considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigate." Factors to be considered include "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence." Id. at 1756 & n.6. Furthermore, the Supreme Court indicated that district courts should "determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances." Id. at 1756.

This Court applied the Octane Fitness principles to a fee award under § 1117(a) of the Lanham Act in Georgia-Pacific. There, the Court took care to distinguish that the "exceptional" case required more than just volitional conduct, else "every Lanham Act case would qualify as 'exceptional' unless the defendant could show that it unintentionally or mistakenly performed the actions later found to be a violation of the Act." 781 F.3d at 720. Instead, following Octane Fitness, the Court set out three circumstances when, "in light of the totality of the circumstances," a case may be deemed "exceptional" such that an award of fees is appropriate. Those circumstances are:

> (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or

23

(3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

Id. at 721.

Relying on Octane Fitness and Georgia-Pacific, the district court concluded this case was not "exceptional." Exclaim III, 2015 WL 5725703, at *6-*8. First, it found that Exclaim's position was neither frivolous nor objectively unreasonable, particularly in light of the competing legal arguments and facts presented at trial. Second, it found Exclaim did not unreasonably litigate the case, pointing out as an example that Exclaim did not re-litigate issues previously decided. Lastly, the court found that the increased profits award had adequately compensated DirecTV and that a fee award was not needed for deterrence.

The district court did not abuse its discretion in so holding. Indeed, DirecTV does not take issue with any of the district court's findings, nor does it otherwise engage with the analysis set out in Octane Fitness and Georgia-Pacific. Instead, it argues that the district court should not have used that analysis and should have relied on pre-Octane Fitness Fourth Circuit case law stating that fees may be awarded where a defendant willfully infringes a plaintiff's trademark. See Georgia-Pacific, 781 F.3d at 719-20. But in Georgia-Pacific, we recognized that Octane Fitness modified our prior analysis and

24

"appl[ied] the Octane Fitness standard when considering the award of attorneys fees under § 1117(a)." Id. at 721. In doing so, we set out the three-part test the district court used in deciding whether to award fees in this case. Id. at 719-21.

Contrary to DirecTV's contention, nothing in either of those cases suggests that the Octane Fitness analysis should not also apply when a plaintiff successfully prosecutes an infringement claim. While the factual background for Octane Fitness may have been a prevailing defendant, nothing limits the overarching objectives identified by the Supreme Court to that context. Common sense confirms that both parties are equally capable of taking unreasonable positions or litigation strategies, just as the particular facts of a case decided in either party's favor may warrant compensation or deterrence. While willfulness remains part of the totality of the circumstances informing the analysis, after Octane Fitness and Georgia-Pacific, it does not end there as DirecTV would have us hold. In short, even assuming Exclaim's infringement was willful, that is no longer sufficient to show that a case is "exceptional."

The district court understood and applied the proper test in determining that this case does not satisfy the applicable standard. Inasmuch as DirecTV does not otherwise challenge the basis for the district court's denial of its motion, the

25

district court did not abuse its discretion in denying DirecTV's motion for attorney's fees.

### III.

For the aforementioned reasons, the judgments of the district court are

AFFIRMED.